| | | |
|---|---|---|
| **BRIAN MCDANIEL** | * | IN THE CIRCUIT COURT |
| 1004 W. Cliveden Street | | |
| Philadephia, PA 19116 | * | OF MARYLAND FOR |
| | | |
| Plaintiff | * | **BALTIMORE CITY** |
| | | |
| **v.** | * | Case No.: |
| | | |
| **STATE OF MARYLAND** | * | |
| 45 Calvert Street | | |
| Annapolis, MD 21401 | * | |
| | | |
| Serve: | * | |
| Douglas F. Gansler | | |
| Attorney General | * | |
| 20 St. Paul Place | | |
| Baltimore, MD 21202 | * | |
| | | |
| **MARYLAND DEPARTMENT OF** | * | |
| **TRANSPORTATION** | | |
| 7201 Corporate Center Drive | * | |
| Hanover, MD 21076 | | |
| | * | |
| Serve: | | |
| Beverly K. Swaim-Staley, | * | |
| Secretary | | |
| 7201 Corporate Center Drive | * | |
| Hanover, MD 21076 | | |
| | * | |
| | | |
| **MARYLAND TRANSPORTATION** | * | |
| **AUTHORITY** | | |
| 4330 Broening Highway | * | |
| Baltimore MD 21222 | | |
| | * | |
| Serve: | | |
| Douglas F. Gansler | * | |
| Attorney General | | |
| 20 St. Paul Place | * | |
| Baltimore, MD 21202 | | |
| | * | |
| **OFFICER ARNOLD** | | |
| ID No.: 0848 | * | |
| MD Transportation Authority | | |
| 2301 South Clinton Street | * | |
| Baltimore, MD 21224 | | |

**OFFICER "JOHN DOE"**
**ID No.: unknwn**[1]
**MD Transportation Authority**
**2301 South Clinton Street**                *
**Baltimore, MD 21224**
                                             *
    **Defendants.**
                                             *

*       *       *       *       *       *    *    *       *       *       *       *

## COMPLAINT AND JURY DEMAND

COMES NOW, the Plaintiff, Brian McDaniel, by and through the undersigned counsel, Kevin M. Joyce, and the law firm of Joyce & Associates, LLC, pursuant to the Maryland Rules, and file the within Complaint, and in support thereof state the following:

## INTRODUCTION

1.       The within Complaint is a civil action against the State of Maryland, the Maryland Department of Transportation, the Maryland Transportation Authority and two individual MdTA officers for the deprivation of Plaintiff's rights and other common law tort claims all stemming from the Defendants' unlawful stop, detention and arrest of Plaintiff.

2.       Defendants stopped Plaintiff's vehicle without just cause – they can be overheard on the video recording of the incident discussing what excuse they should give Plaintiff for stopping him. During the course of the originally improper stop Defendants learned that Plaintiff was transporting a firearm. Despite the fact that Plaintiff was transporting this firearm in accordance with the Federal Firearm Owners Protection Act, Plaintiff was placed under arrest for

---

[1] Defendant Officer "John Doe" was paired with Defendant Officer Arnold during the incident at issue in the within Complaint. However, Defendant Officer "John Doe's" name and identifying information are not visible anywhere on either the related criminal docket or charging papers. Plaintiff intends to amend the instant Complaint to properly name Defendant Officer "John Doe" after his specific identity is learned through discovery.

improperly transporting his firearm under Maryland State law – a law that is superseded by the Federal statute.

3.      Defendants stop of Plaintiff was malicious and or grossly negligent in that he was stopped solely based upon his race.  Defendants true purpose in stopping Plaintiff was their suspicion, based solely upon Plaintiff's race, that Plaintiff possessed narcotics.  This fact is born out by the fact that Defendants spent nearly an hour searching Plaintiff's vehicle for narcotics. Defendants then chose to falsely arrest Plaintiff for the weapons charge – despite that charge being superseded by Federal law – in an attempt to cover up their racially profiling and improper behavior.

4.      As a result of the tortious behavior of Defendants as well as Defendants' violation of Plaintiff's rights (as discussed in greater detail, *infra*), Plaintiff brings the instant suit pursuant to 42 U.S.C.A. § 1983, seeking damages against Defendants for committing acts under color of law that deprived Plaintiff of his rights as secured by the United States Constitution, the Maryland Constitution, as well as various other state and federal statutory provisions.

5.      Plaintiff also brings the within action for the various common law torts committed by Defendants, including but not limited to: battery, false imprisonment, negligence, negligent hiring, retention, training and supervision, civil conspiracy, and intentional infliction of emotional distress.

### PARTIES, VENUE AND JURISDICTION

6.      Plaintiff, Brian McDaniel (hereinafter "McDaniel"), is and was at all times relevant hereto a resident of the Commonwealth of Pennsylvania, residing at 1004 West Cliveden Street, Philadelphia, Pennsylvania 19119, in Philadelphia County.

7.    Defendant, State of Maryland, is a governmental body responsible for overseeing the MDOT, MdTA and, ultimately, the Defendant Officers.

8.    Defendant, Maryland Department of Transportation ("MDOT") is a governmental agency organized under the laws of the state of Maryland and having oversight over the MdTA and, ultimately, the Defendant Officers.

9.    Defendant, Maryland Transportation Authority ("MdTA") is an independent agency organized under the laws of the State of Maryland.   The MdTA maintains a police department which operates under and administers a set of law enforcement policies, practices and customs involving the hiring, training and supervision of its police officers.  These policies, practices and customs include training and arrest and on-the-street encounters with civilians. The MdTA is and was at all times relevant operating under the authority of the MDOT and the State of Maryland.

10.    Defendant, Officer Arnold, is and was at all times relevant hereto a citizen of the state of Maryland, and was at all times relevant to this proceeding a MdTA Officer acting within the course and scope of his employment as an employee of Defendant MdTA. Defendant Arnold is being sued in his individual and official capacities.

11.    Defendant, Officer John Doe, is and was at all times relevant hereto a citizen of the state of Maryland, and was at all times relevant to this proceeding a MdTA Officer acting within the course and scope of his employment as an employee of Defendant MdTA.  Defendant Arnold is being sued in his individual and official capacities.  (Hereinafter, Defendant Officer John Doe and Defendant Officer Arnold shall be referred to as "Defendant Officers.")

12.    This Court has jurisdiction over the subject matter of this case pursuant to MD Code, Courts and Judicial Proceedings Article, § 6-102 and 6-103.

4

13.     Venue is proper pursuant to MD Code, Courts and Judicial Proceedings Article, § 6-201.

## FACTS

14.     Plaintiff is an African-American male possessing both an undergraduate degree, as well as Master of Business Administration.  Plaintiff also, for his own protection, at all times relevant and to this present day lawfully possessed/possesses a permit ("CCW") to carry a handgun issued by the Commonwealth of Pennsylvania.

15.     During November of 2006 Plaintiff was employed in Baltimore and, as a result, had a separate temporary residence in the State of Maryland for occasions when travelling back to his permanent residence was not feasible.

16.     Plaintiff is and was at all times relevant, however, aware that his Pennsylvania CCW does not and did not have reciprocity in Maryland.  Accordingly, whenever he was traveling from his principle residence in Philadelphia, Pennsylvania to his secondary residence in Maryland he placed his weapon in the trunk of his car where it was inaccessible from the passenger compartment in accordance with the Firearm Owners Protection Act, 18 U.S.C.A. 921 et seq.

17.     On 7 November 2006 Mr. McDaniel was traveling to his temporary Maryland residence on Southbound Interstate 95 at approximately 2:30 p.m.  Plaintiff was driving a 2000 Dodge Intrepid bearing valid Florida registration C851EE.[2]

18.     As Plaintiff was driving Southbound on Interstate 95 he was being followed by the above named Defendant Officers acting in the scope of their employment with the Maryland

---

[2] Plaintiff's parents maintain a residence in Florida.  As a result Plaintiff at some point prior to the events at issue had his vehicle registered in Florida and had not yet had an opportunity to change his vehicle registration to the Commonwealth of Pennsylvania.

Transportation Authority, and accordingly under the Maryland Department of Transportation and ultimately the State of Maryland.

19.     During the entire time the Defendant Officers were following Plaintiff he committed no traffic violations (this is verified by a video and audio recording of the incident). However, Plaintiff, having a "feeling" that he was being profiled, executed a lane change from lane 2 to lane 3. Immediately following Plaintiff's lane change the Defendant Officers, acting in the scope of their employment, engaged their emergency lights and stopped Plaintiff's vehicle. Plaintiff immediately pulled to the side of the road.

20.     While Plaintiff was sitting on the side of the road in front of the MDOT Officer's cruiser the Defendant Officers can be clearly heard discussing a reason to give Plaintiff for why he was pulled over. One Defendant Officer can clearly be heard telling the other to tell Plaintiff "that he was following to closely, or whatever you want to tell him."[3]  However, when the Defendant Officer approached Plaintiff he stated he was being pulled over for speeding – not for the cause of following to closely that the Defendant Officers had agreed on prior to approaching Plaintiff. Amazingly, when Plaintiff protests that he was not speeding, the Defendant Officer states his observation of the speed limit is of no moment as he was also following the vehicle ahead of him too closely.

21.     While the video recording of the incident does not articulate the speed of either the Defendant Officers' vehicle or that of Plaintiff's, it is clear that Plaintiff was following the flow of traffic and even being passed by other civilian vehicles. In short, even assuming *arguendo*, that Plaintiff was speeding (something Plaintiff expressly denies), there were other vehicles that were violating the posted speed limit to a greater extent than Plaintiff.

---

[3] Indeed, the video recording does not support the allegation of Plaintiff following too closely.

6

22.     Defendant Officers demanded that Plaintiff produce his license and registration – a demand with which Plaintiff promptly complied.  However, as Plaintiff retrieved his license from his wallet the Defendant Officer observed Plaintiff's valid Pennsylvania CCW.

23.     Upon seeing Plaintiff's CCW, Defendant Officers immediately removed Plaintiff from the vehicle and placed him in handcuffs.  It was not until *after* Plaintiff was removed from the vehicle and placed in handcuffs that he was asked whether there was a firearm in the vehicle.[4]

24.     Plaintiff honestly answered in the affirmative and that the weapon (a Glock 19)[5] was in the trunk and being transported as required by the Firearm Owners Protection Act, 18 U.S.C.A. 921 et seq.

25.     Defendant Officers proceeded to search Plaintiff's vehicle.  However, incredibly, despite Plaintiff informing the Defendant Officers of the exact location of the weapon, the Defendant Officers first performed a cursory search of the passenger compartment, then opened the trunk where the weapon was located, and then continued to search the passenger compartment of the vehicle, *despite the trunk being open and readily accessible and the weapon not removed and secured – all contrary to what a reasonable officer in Defendant Officers' position would have done.*

26.     Had Defendant Officers truly believed that Plaintiff's firearm was a violation of the law or presented a danger a reasonable officer would have secured it immediately and **prior**

---

[4] Defendant Officer Arnold's "Statement of Probable Cause" incorrectly reverses the chronological order of facts (e.g., misstating that Plaintiff volunteered he had a firearm before he was removed from the vehicle and then noting his Pennsylvania CCW).  Similarly, the "Statement of Probable Cause" seems to allege tome amount of reckless driving on the part of Plaintiff, as well as directly alleging that Plaintiff was following another vehicle too closely.  Neither allegation is supported by the videotape of the incident.
[5] Despite repeated requests this weapon has never been returned to Plaintiff.

**to** any further search of Plaintiff's vehicle for narcotics. This behavior by Defendant Officers merely serves to corroborate that the stop was without just cause from the very beginning (see, *supra*, Defendant Officers discussed what excuse they should give Plaintiff for why he was being stopped).

27.     In short, Defendant Officers saw an African American male, wearing "comfort clothing" due to the long drive, and bearing Florida plates and decided Plaintiff fit the profile, based upon his race, for an individual likely to be transporting drugs. This is supported by the near hour-long search of the vehicle, including the calling of additional units: a K9 – who Defendant Officers never actually used -- as well as another officer who brought tools to physically pry Plaintiff's vehicle apart, convinced it contained narcotics.

28.     Plaintiff, despite not breaking any laws (the Firearm Owners Protection Act, as Federal Law, supersedes Maryland law to the extent they are inconsistent and the Federal law may apply) as the firearm was being properly transported, no narcotics were present and, indeed, Plaintiff had not even committed a traffic infraction, Plaintiff was placed under arrest.

29.     The Statement of Charges allege that Plaintiff violated MD Code, Criminal Article, § 4-203: wearing, carrying, and knowingly transporting a handgun in a vehicle upon the public roads.... Plaintiff was also cited for following a vehicle too closely. Of importance to note, Plaintiff was not cited for speeding despite his alleged excess speed being the Defendant Officers' initial statement of cause for stopping Plaintiff.

30.     Plaintiff was transported to the MdTA headquarters for processing and then eventually to the Baltimore City Jail around 7 or 8 p.m. that same evening.

31.     At the Baltimore City Jail, Plaintiff was locked up with actual criminals, stripped of his shoes and forced to go barefoot, sleep on the floor, and observe other inmates abuse illicit

substances,[6] while being forced to wait approximately thirty (30) hours before he could bond out (costing Plaintiff $150.00). All of the indignities – and their attendant emotional traumas – were the direct result of the malicious behavior of the Defendant Officers who were acting within the scope of their employment with the Maryland Transportation Authority, which operates under the Maryland Department of Transportation and ultimately under the State of Maryland.

32.     However, on 7 February 2007, realizing that there was no grounds to maintain the charge of either following a vehicle too closely or the charge of unlawful transfer of a firearm, the State's Attorneys office for Baltimore City, *sua sponte*, entered a Nolle Prosequi on both charges.

33.     It is clear, especially in light of the Defendant Officers' discussion prior to approaching Plaintiff, about what "excuse" they should give for having pulled him over, coupled with their behavior in searching Plaintiff's vehicle, that Plaintiff was profiled based on his race and subjected to an unreasonable stop, seizure and arrest – all in violation of his Fourth and Fourteenth Amendments to the U.S. Constitution as well as their Maryland Constitution counterparts.

34.     Had Plaintiff been a white male, the Defendant Officers would not have engaged in the harassing, profiling, racially charged and improper stop of Plaintiff. Defendant Officers knew they had no cause to stop Plaintiff's vehicle at the time they stopped it, but did so anyway solely because of Plaintiff's skin color.

35.     Pursuant to the Firearm Owner's Protection Act, discussed *supra*, Plaintiff was immune from arrest for the manner in which he was transporting his firearm.

---

[6] Indeed, Plaintiff was placed through trauma of discovering that another inmate in an adjoining cell died while Plaintiff was waiting to be released.

36. Defendant Officers, who were acting within the scope of their employment with the Maryland Transportation Authority (which operates under the authority of the MDOT and ultimately the State of Maryland), had no reasonable articulable suspicion to stop Plaintiff, let alone probable cause. Defendant Officers' conduct was harassing, malicious, based solely on Plaintiff's race and without any merit. Accordingly, Defendant Officers are not entitled to any statutory or common law protections for their civil and tortuous conduct.

37. As a result of Defendants' tortuous conduct, Plaintiff has suffered severe emotional distress, insomnia, humiliation, embarrassment, and anxiety. By way of example only, as a result of these criminal charges Plaintiff has been nervous to even seek employment, and has been anxious following each application for employment as he is left wondering if the fraudulent charges on his record might effect his ability to gain the employment applied for.[7]

38. Further Plaintiff has experienced severe anxiety and fear, especially when in the presence of law enforcement officers – an utter tragedy that the actions of these select Defendants have caused this law-abiding Plaintiff to fear those individuals sworn to protect him. Moreover, Plaintiff has experienced generalized anxiety, insomnia, depression and attendant physical manifestations of these emotional conditions.

39. Plaintiff gave timely notice of the claims contained in the instant Complaint, as required by MD Code, State Government Article § 12-106 (the Maryland Tort Claims Act) on 15 October 2007.

40. Defendant Officers acted with actual malice and or gross negligence in committing the torts described in this Complaint.

---

[7] While it is true that Plaintiff could seek to have the charges expunged, to do so he must waive any and all rights to suit against the Defendants here for their violation of his Constitutional rights. Thus, Plaintiff is not truly free to have the charges expunged until the instant litigation is concluded.

41.     Defendant Officers were acting under the scope of their employment with MdTA at all times complained.

42.     Upon information and belief, it is the policy and common practice of the MdTA to direct its agents and employees to racially profile individuals such as Plaintiff here, and to conduct unlawful stops, searches and seizures. The Maryland Department of Transportation and the State of Maryland are both aware of and condone this policy of the MdTA.

43.     Given the nature of this action, Plaintiff is entitled to an award of attorney's fees.

## COUNT I
### (Deprivation of Civil Rights, 42 U.S.C.A. § 1983 against all Defendants)

44.     Plaintiff hereby incorporates by reference each of the preceding allegations as if stated fully herein.

45.     The Fourth and Fourteenth Amendments to the U.S. Constitution grants Plaintiff the right to be free from unreasonable searches and seizures.

46.     The Firearm Owners Protection Act, 18 U.S.C.A. 921 et seq., grants Plaintiff the right to carry his firearm in the manner in which he was carrying it on 7 November 2009.

47.     42 U.S.C.A. §1983 gives Plaintiff a private cause of action for Defendants' violation of the above cited Constitutional and statutory protections.

48.     In violation of Plaintiff's Constitutional rights described above, on 7 November 2006, Defendant Officers committed an unreasonable search followed by an unreasonable seizure of both the Plaintiff's person and property without due process of law.

49.     The unlawful acts of Defendant Officers were the result of the implemented policy of the MdTA, MDOT and the State of Maryland.

50.     As a direct and proximate result of the Defendant Officers' unreasonable search and seizure Plaintiff has suffered damages as detailed *supra*.

WHEREFORE, Plaintiff demands judgment be entered in his favor against Defendant Officers, MdTA, MDOT and the State of Maryland, jointly and severally, for compensatory damages in the amount of One Million Dollars ($1,000,000.00) and punitive damages in the amount of Three Million Dollars ($3,000,000.00), plus attorney's fees, interest, costs, and fees.

## COUNT II
### (Deprivation of Civil Rights, 42 U.S.C.A. § 1983 against Defendant Officers)

51.     Plaintiff hereby incorporates by reference each of the preceding allegations as if stated fully herein.

52.     The Fourth and Fourteenth Amendments to the U.S. Constitution grants Plaintiff the right to be free from unreasonable searches and seizures.

53.     The Firearm Owners Protection Act, 18 U.S.C.A. 921 et seq., grants Plaintiff the right to carry his firearm in the manner in which he was carrying it on 7 November 2009.

54.     42 U.S.C.A. §1983 gives Plaintiff a private cause of action for Defendants' violation of the above cited Constitutional and statutory protections.

55.     In violation of Plaintiff's Constitutional rights described above, on 7 November 2006, Defendant Officers committed an unreasonable search followed by an unreasonable seizure of both the Plaintiff's person and property without due process of law.

56.     As a direct and proximate result of the Defendant Officers' unreasonable search and seizure Plaintiff has suffered damages as detailed *supra*.

WHEREFORE, Plaintiff demands judgment be entered in his favor against Defendant Officers, jointly and severally, for compensatory damages in the amount of One Million Dollars ($1,000,000.00) and punitive damages in the amount of Three Million Dollars ($3,000,000.00), plus attorney's fees, interest, costs, and fees.

## COUNT III
### (Violation of Maryland Constitution against all Defendants)

57. Plaintiff hereby incorporates by reference each of the foregoing allegations as if stated fully herein.

58. Articles 24 and 26 of the Maryland Declaration of Rights afford Plaintiff the right to due process of law before being subjected to an unreasonable detention, search, seizure and deprivation of his liberty.

59. In violation of Plaintiff's rights under the Maryland Constitution as described above, on 7 November 2006, Defendant Officers committed an unreasonable search followed by an unreasonable seizure of both the Plaintiff's person and property without due process of law.

60. The unlawful acts of Defendant Officers were the result of the implemented policy of the MdTA, MDOT and the State of Maryland

61. As a direct and proximate result of the Defendant Officers' unreasonable search and seizure Plaintiff has suffered damages as detailed *supra*.

WHEREFORE, Plaintiff demands judgment be entered in his favor against Defendant Officers, MdTA, MDOT and the State of Maryland, jointly and severally, for compensatory damages in the amount of One Million Dollars ($1,000,000.00) and punitive damages in the amount of Three Million Dollars ($3,000,000.00), plus attorney's fees, interest, costs, and fees.

## COUNT IV
### (Violation of Maryland Declaration of Rights Against Defendant Officers)

62. Plaintiff hereby incorporates by reference each of the foregoing allegations as if stated fully herein.

63.     Articles 24 and 26 of the Maryland Declaration of Rights afford Plaintiff the right to due process of law before being subjected to an unreasonable detention, search, seizure and deprivation of his liberty.

64.     In violation of Plaintiff's rights under the Maryland Constitution as described above, on 7 November 2006, Defendant Officers committed an unreasonable search followed by an unreasonable seizure of both the Plaintiff's person and property without due process of law.

65.     As a direct and proximate result of the Defendant Officers' unreasonable search and seizure Plaintiff has suffered damages as detailed *supra*.

WHEREFORE, Plaintiff demands judgment be entered in his favor against Defendant Officers, jointly and severally, for compensatory damages in the amount of One Million Dollars ($1,000,000.00) and punitive damages in the amount of Three Million Dollars ($3,000,000.00), plus attorney's fees, interest, costs, and fees.

## COUNT V
### (False Imprisonment)

66.     Plaintiff hereby incorporates by reference each of the foregoing allegations as if stated fully herein.

67.     On 7 November 2006 Defendant Officers stopped Plaintiffs vehicle without any reasonable articulable suspicion to believe a crime was being committed or even that Plaintiff had committed a minor traffic infraction (See factual section, *supra*).

68.     During the 7 November 2006 stop Plaintiff was lawfully transporting a firearm under the Federal Firearm Owners Protection Act.  As the Federal Firearm Owners Protection Act supersedes Maryland State law, Plaintiff, as a matter of law, could not have been violating criminal sections which Defendant Officers charged him with as a basis for his arrest.

69.     With no legal authority to make the arrest under the circumstances, Defendant Officers proceeded to arrest Plaintiff by placing him in handcuffs, escorting him to a MdTA squad car, processing him at the MdTA headquarters and eventually transporting him to the Baltimore City Jail.

70.     As a result of Defendant Officers' false imprisonment of Plaintiff (and that which their actions caused), Plaintiff suffered severe mental trauma, anxiety, humiliation, discomfort about his wrists, a sleepless night in the Baltimore City Jail, freezing feet, unsanitary conditions and a painful night lying on the floor of the Baltimore City Jail.

71.     At no time was Plaintiff able to leave, and at every point Plaintiff was aware of his confinement.

72.     Defendant Officers caused Plaintiff to be unlawfully deprived of his liberty and caused Plaintiff to be detained against his will for approximately forty-eight (48) hours.

73.     As a result of Defendant Officers' actions in unlawfully detaining Plaintiff, Mr. McDaniel has suffered harms as discussed *supra*.

WHEREFORE, Plaintiff demands judgment be entered in his favor against Defendant Officers, jointly and severally, for compensatory damages in the amount of One Million Dollars ($1,000,000.00) and punitive damages in the amount of Three Million Dollars ($3,000,000.00), plus attorney's fees, interest, costs, and fees.

## COUNT VI
### (Intentional Infliction of Emotional Distress against Defendant Officers)

74.     Plaintiff hereby incorporates the foregoing paragraphs by reference as if stated fully herein.

75.     Defendant Officers acted with the intent to inflict emotional distress on Plaintiff by committing their actions as described, *supra*. In the alternative, Defendant Officers acted

with an extremely reckless disregard to the fact that their conduct would cause Plaintiff emotional distress.

76.    Defendant Officers' conduct was extreme and outrageous and beyond all acceptable bound of society: all while acting under the color of law, they stopped Plaintiff based solely upon his race, arrested him in violation of his State and Federal Constitutional rights, and charged him with a crime that he could not have committed – and did not commit.  In light of Plaintiff's lawful conduct, it was extreme and outrageous that Defendant Officers would seize Plaintiff's person and property (including literally taking apart Plaintiff's vehicle in a search for narcotics).

77.    Defendant Officers' conduct is the direct and proximate cause of the emotional distress Plaintiff has suffered.

78.    As a result of Defendant Officers' conduct Plaintiff has suffered extreme emotional distress, including but not limited to, insomnia, humiliation, embarrassment, and anxiety – as well as attendant physical manifestations of such emotional distress.  By way of example only, as a result of these criminal charges Plaintiff has been nervous to even seek employment, and has been anxious following each application for employment as he is left wondering if the fraudulent charges on his record might effect his ability to gain the employment applied for.

79.    Plaintiff has desired to seek the help of mental health professionals to help him deal with the emotional distress he has suffered but has been unable to do so due to a lack of health insurance.

WHEREFORE, Plaintiff demands judgment be entered in his favor against Defendant Officers, jointly and severally, for compensatory damages in the amount of One Million Dollars

($1,000,000.00) and punitive damages in the amount of Three Million Dollars ($3,000,000.00), plus attorney's fees, interest, costs, and fees.

## COUNT VII
### (Battery against Defendant Officers)

80.    Plaintiff hereby incorporates by reference each of the foregoing allegations as if stated fully herein.

81.    Defendant Officers intentionally caused harmful and offensive physical contact to be felt by Plaintiff.  Specifically, Defendant Officers placed Plaintiff in handcuffs and instead of releasing him after realizing he had committed no crime, continued to hold Plaintiff in handcuffs, transported him in the back of a police cruiser and ultimately are responsible for Plaintiff's stay in the Baltimore City Jail during which he experienced numerous and ongoing unwanted physical contact.

82.    Plaintiff did not consent to this physical contact.

83.    As a result of Defendant Officers' unwanted and unwarranted physical contact with Plaintiff (and that which their actions caused), Plaintiff suffered severe mental trauma, anxiety, humiliation, discomfort about his wrists, a sleepless night in the Baltimore City Jail, freezing feet, unsanitary conditions and a painful night lying on the floor of the Baltimore City Jail.

WHEREFORE, Plaintiff demands judgment be entered in his favor against Defendant Officers, jointly and severally, for compensatory damages in the amount of One Million Dollars ($1,000,000.00) and punitive damages in the amount of Three Million Dollars ($3,000,000.00), plus attorney's fees, interest, costs, and fees.

## COUNT VIII
### (Negligence against Defendant Officers)

84.   Plaintiff hereby incorporates each of the foregoing allegations as if stated fully herein.

85.   Defendant Officers owed Plaintiff a duty to use reasonable care in carrying out their duties as MdTA officers as well as with interacting with Plaintiff.

86.   Defendant Officers breached this duty by inappropriately stopping Plaintiff's vehicle based solely on his race, unlawfully seizing Plaintiff's person and property and unlawfully arresting Plaintiff on meritless charges.

87.   As a direct and proximate result of Defendant Officers' negligence Plaintiff has suffered greatly as described in greater detail, *supra*.

WHEREFORE, Plaintiff demands judgment be entered in his favor against Defendant Officers, jointly and severally, for compensatory damages in the amount of One Million Dollars ($1,000,000.00), plus attorney's fees, interest, costs, and fees.

## COUNT IX
### (Civil Conspiracy against all Defendants)

88.   Plaintiff hereby incorporates by reference each of the foregoing allegations as if stated fully herein.

89.   Defendants entered into a conspiracy to racially profile African Americans such as Plaintiff in violation of his State and Federal Constitutional Rights.

90.   Upon information and belief, it is the routine practice of Defendants to racially profile African Americans such as Plaintiff in violation of such individuals State and Federal Constitutional rights.

91.    In furtherance of this conspiracy, Defendants instructed MdTA personnel, including Defendant Officers, to conduct meritless stops of African Americans in their patrol sector resulting in the Intentional Infliction of Emotional Distress, False Imprisonment, Battery, violation of Constitutional protections and Negligence inflicted upon Plaintiff.

92.    As a result of Defendants' tortious conduct, Plaintiff has suffered severe mental anguish and other significant harm as described in greater detail, *supra.*

WHEREFORE, Plaintiff demands judgment be entered in his favor against Defendant Officers, MdTA, MDOT and the State of Maryland, jointly and severally, for compensatory damages in the amount of One Million Dollars ($1,000,000.00) and punitive damages in the amount of Three Million Dollars ($3,000,000.00), plus attorney's fees, interest, costs, and fees.

## COUNT X
### (Civil Conspiracy against Defendant Officers)

93.    Plaintiff hereby incorporates each of the foregoing allegations as if stated fully herein.

94.    Defendant Officers entered into a conspiracy to racially profile Plaintiff in violation of his State and Federal Constitutional Rights.

95.    In furtherance of this conspiracy, Defendant Officers conducted a meritless stop of Plaintiff resulting in the Intentional Infliction of Emotional Distress, False Imprisonment, Battery, violation of Constitutional protections and Negligence inflicted upon Plaintiff.

96.    As a result of Defendants' tortious conduct, Plaintiff has suffered severe mental anguish and other significant harm as described in greater detail, *supra.*

WHEREFORE, Plaintiff demands judgment be entered in his favor against Defendant Officers, jointly and severally, for compensatory damages in the amount of One Million Dollars

($1,000,000.00) and punitive damages in the amount of Three Million Dollars ($3,000,000.00), plus attorney's fees, interest, costs, and fees.

## COUNT XI
### (Negligent Hiring, Retention, Supervision and Training against Defendants MdTA)

97.     Plaintiff hereby incorporated each of the foregoing allegations as if stated fully herein.

98.     Defendant Officers were the actual agents and employees of the MdTA and acting within the scope of their employment with the MdTA at all times relevant.

99.     Defendant Officers tortious conduct, as described in greater detail in Counts I through X were the actual and proximate cause of the injuries suffered by Plaintiff as detailed *supra*.

100.    Defendant Officers tortious conduct caused Plaintiff to suffer reasonably foreseeable injuries.

101.    Upon information and belief, Defendant MdTA had actual knowledge that Defendant Officers made a habit of engaging in racially profiling and discriminatory behavior such as that suffered by Plaintiff.

102.    Defendant MdTA had a duty to use reasonable care in selecting, supervising, training and retaining Defendant Officers to prevent racially profiling and discriminatory behavior from occurring.

103.    Defendant MdTA's breach of the above described duty to use reasonable care in selecting, supervising, training and retaining Defendant Officers was the proximate cause of Plaintiff's injuries.

104.    Plaintiff suffered severe injuries as a result of MdTA's breach of their duty to use reasonable care in selecting, supervising, training and retaining Defendant Officers as discussed in greater detail *supra*.

WHEREFORE, Plaintiff demands judgment be entered in his favor against Defendant MdTA, for compensatory damages in the amount of One Million Dollars ($1,000,000.00), plus attorney's fees, interest, costs, and fees.

### COUNT XII
### (Respondeat Superior against Defendants MdTA, MDOT and the State of Maryland)

105.    Plaintiff hereby incorporates by reference each of the foregoing allegations as if stated fully herein.

106.    Defendant Officers are the actual agents and employees of Defendant MdTA. Defendants MDOT and the State of Maryland are directly involved in the operation of the MdTA.

107.    Defendant Officers engaged in tortious behavior that caused severe and lasting injuries to Plaintiff.

108.    Defendant Officers engaged in said tortious behavior while acting in the scope of their employment with Defendant MdTA.

109.    Defendants MdTA, MDOT and the State of Maryland were reckless in failing to address the tortious behavior of Defendant Officers.

110.    As a result of the tortious behavior of Defendant Officers, Plaintiff has suffered violations of his State and Federal Constitutional rights, Intentional Infliction of Emotional Distress, False Imprisonment, Battery, Civil Conspiracy and Negligence as described *supra*.

WHEREFORE, Plaintiff demands judgment be entered in his favor against Defendants MdTA, MDOT and the State of Maryland, jointly and severally, for compensatory damages in the

amount of One Million Dollars ($1,000,000.00) and punitive damages in the amount of Three Million Dollars ($3,000,000.00), plus attorney's fees, interest, costs, and fees.

Respectfully submitted,

JOYCE & ASSOCIATES, LLC

Kevin M. Joyce, Esq.
69 Franklin Street
Annapolis, Maryland 21401
410.991.1785