IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRIAN McDANIEL

    Plaintiff,

      v.

STATE OF MARYLAND, et al.

    Defendants.

Civil Action No.: RDB–10–00189

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Brian McDaniel ("Plaintiff" or "McDaniel") has brought the present action asserting several constitutional and common law causes of action against the State of Maryland, the Maryland Department of Transportation ("MDOT"), the Maryland Transportation Authority ("MDTA"), MDTA police officer R. Arnold, and an unknown MDTA police officer named as "John Doe" (collectively, "Defendants"). This lawsuit arises out of an incident in which McDaniel was allegedly subjected to an unreasonable search, seizure, and arrest during a traffic stop. Defendants have filed two separate motions to dismiss that are currently pending before this Court. The parties' submissions have been reviewed and no hearing is necessary to resolve this matter. *See* Local Rule 105.6 (D. Md. 2010). For the reasons stated below, the Defendants' motions are GRANTED IN PART insofar as Counts I, III, VI, VII, VIII, IX, XI, and XII are DISMISSED. The motions are DENIED IN PART insofar as Counts II (Section 1983 claim against the Defendant Officers), IV (claim under the Maryland Declaration of Rights against the Defendant Officers), V (false imprisonment), and X (civil conspiracy against the Defendant Officers) may proceed.

1

# BACKGROUND

In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and are construed in the light most favorable to the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Plaintiff Brian McDaniel ("Plaintiff" or "McDaniel") is an African American man and a resident of Philadelphia, Pennsylvania. (Compl. ¶¶ 6, 14.) At the time of the underlying events, McDaniel was employed in Baltimore City and he maintained a separate temporary residence in Maryland. (*Id.* ¶ 15.) In addition, McDaniel owned a Glock 19 handgun and possessed a Pennsylvania license to carry a concealed weapon. (*Id.* ¶¶ 14, 16.) Because his license did not have reciprocity in Maryland, McDaniel kept his handgun in the trunk of his car whenever he was in Maryland in order to comply with the Firearm Owners' Protection Act, 18 U.S.C § 921, *et seq.* (*Id.* ¶ 16.)

On the afternoon of November 7, 2006, McDaniel was driving southbound on I-95 in Baltimore City. (*Id.* ¶ 17.) At approximately 2:30 p.m. that afternoon, McDaniel's vehicle was being trailed by Officer Arnold and Officer "John Doe" of the Maryland Transportation Authority Police ("MDTA"). After McDaniel changed lanes in his vehicle, he was immediately pulled over by the officers. (*Id.* ¶ 19.) McDaniel claims that the police audiovisual recording of the stop reveals that he had not violated any traffic laws and that other cars had been driving at a greater rate of speed. (*Id.* ¶ 21.) Soon after he was pulled over, the officers allegedly discussed justifications for the stop and one officer advised the other officer to tell McDaniel that he "was following too closely, or whatever you want to tell him." (*Id.* ¶ 20.) One of the officers approached McDaniel's car and explained that he had been stopped for speeding. (*Id.*) After McDaniel responded that he had not been speeding, the officer stated that McDaniel had been following another vehicle too closely. (*Id.*) McDaniel claims that as he was retrieving his

driver's license and registration, the officers noticed that he had a permit to carry a concealed weapon in his wallet, and immediately removed McDaniel from the car and placed him in handcuffs. (*Id.* ¶¶ 22-23.) The officers then asked McDaniel if he had a weapon in the car. (*Id.* ¶ 23.) After McDaniel disclosed that he had a handgun in the trunk, the officers allegedly began searching the passenger compartment of the vehicle before proceeding to inspect the trunk. (*Id.* ¶ 25.) The officers' search lasted for nearly an hour and they called in additional assistance, including a K-9 unit and another officer who brought tools to pry open the vehicle. (*Id.* ¶ 27.) McDaniel claims that he was the victim of racial profiling and that the officers assumed that he was a drug transporter because he was an African American man wearing "comfort clothes" and he was driving a car with Florida registration. (*Id.* ¶ 27.)

Defendants, on the other hand, state that they pulled over McDaniel's vehicle after they observed him following another car too closely. They assert that after he produced his driver's license, McDaniel voluntarily informed the officers that there was a loaded handgun in the trunk, and that he had a Pennsylvania permit to carry the handgun. Believing that McDaniel was in violation of state and federal law, the officers executed a search of the vehicle. From a shopping bag in the trunk, the officers recovered the Glock 19, which contained ten live 9mm rounds in the magazine (but none in the chamber), and another magazine containing eight live 9mm rounds. Officer Arnold then placed McDaniel under arrest for unlawful transportation of a handgun in a vehicle, in violation of Md. Code Ann., Crim. Law § 4–203.

As a result of the traffic stop, the officers issued McDaniel a citation for following too closely and charged him with unlawful transportation of a handgun. McDaniel spent approximately thirty hours in the Baltimore City Jail and posted bail almost two days after the

traffic stop.  (Compl. ¶ 31.)  Three months later, on February 7, 2007, the State's Attorney's office for Baltimore City entered a *nolle prosequi* as to both charges.  (*Id.* ¶ 32.)

On November 6, 2009, almost three years to the day after the incident, McDaniel filed a twelve-count complaint against the State of Maryland, the Maryland Department of Transportation, the Maryland Transit Authority, Officer Arnold, and an unknown officer ("John Doe") in the Circuit Court for Baltimore City.  On January 26, 2010, the Defendants removed the case to this Court on the basis of federal question jurisdiction.  28 U.S.C. § 1331.  McDaniel's Complaint is construed as asserting four claims under 42 U.S.C. § 1983 for constitutional violations of his Fourth and Fourteenth Amendment rights and eight claims under the Maryland Declaration of Rights and state common law.  McDaniel seeks $1 million in compensatory damages, $3 million in punitive damages, and a recovery for attorney's fees, interest, and associated costs.

On February 12, 2010, Defendants filed a Motion to Dismiss and a Memorandum in Support (Paper Nos. 7 & 8) and on March 2, 2010, they filed a Supplemental Motion to Dismiss and a Memorandum in Support (Paper Nos. 9 & 10).  McDaniel filed an opposition brief on March 19, 2010, and Defendants filed a reply on March 25, 2010.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Thus, a court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See Twombly*, 550 U.S. at 555 (noting that "courts are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Thus, even though Rule 8(a)(2) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained recently that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *see also Arista Records LLC v. Doe*, 604 F.3d 110, 120-21 (2d Cir. 2010) (noting that while *Twombly* and *Iqbal* "require factual

amplification [where] needed to render a claim plausible" the cases do not "require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible") (internal quotations omitted). Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 129 S. Ct. at 1950.

## DISCUSSION

### A.     State Sovereign Immunity and the MTCA Notice Requirements

In Count III of his Complaint, McDaniel has asserted a claim against the State, the Maryland Department of Transportation ("MDOT"), and the Maryland Transportation Authority ("MDTA") for violations of Articles 24 and 26 of the Maryland Declaration of Rights, and in Count XI he has sued the MDTA for negligent hiring, retention, supervision and training. In order to sue the State or one of its agencies,[1] a plaintiff must first comply with the notice requirements of the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't § 12–101, *et seq.*, which provides a limited waiver of State sovereign immunity. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court.") (internal quotation marks omitted). Specifically, a plaintiff must provide written notice to the State Treasurer or its designees within one year of the alleged injury. *Gray v. Maryland*, 228 F. Supp. 2d 628, 640-41 (D. Md. 2002). The MTCA's notice requirements are strictly enforced and courts may not "entertain claims by claimants who fail to exhaust their administrative remedies before the Treasurer." *Chinwuba v. Larsen*, 142 Md. App. 327, 354, 790 A.2d 83 (2002). These prerequisites are designed to "afford[] the State the opportunity to investigate the claims while

---

[1] The Maryland Department of Transportation and the Maryland Transportation Authority are both state agencies and therefore enjoy the same sovereign immunity under the Eleventh Amendment as does the State. *See, e.g.*, *Thompson v. State of Maryland Department of Transportation, et al.*, 2010 U.S. Dist. LEXIS 58268, at *3 (D. Md. June 14, 2010); *Kess v. Maryland*, 2001 U.S. Dist. LEXIS 989, at *8 (D. Md. Jan. 29, 2001).

the facts are fresh and memories vivid, and, where appropriate, settle them at the earliest possible time." *Haupt v. State*, 340 Md. 462, 470, 667 A.2d 179 (1995).

Defendants note that McDaniel failed to timely comply with the MTCA's notice requirements because he never served notice of the lawsuit on the State Treasurer or any of its designees. McDaniel concedes that he did not effect service upon the Treasurer. Pl.'s Opp. at 18. Nevertheless, he argues that he substantially complied with the notice requirements by serving the State Attorney General and that he should therefore be granted leave to refile his suit against the Defendants.

While substantial compliance has been recognized with respect to the MTCA, the doctrine has been narrowly construed and it is well settled that service on the Attorney General does not provide the requisite notice. *See Chinwuba*, 142 Md. App. at 356 ("The effect of holding that service on the Attorney General constitutes substantial compliance with the notice requirements of the MTCA would be to allow claimants, *at their option*, to cut the Treasurer out of the statutory equation crafted by the legislature . . . .") (emphasis in original)). There is a "longstanding principle under Maryland law that the failure to meet a condition precedent extinguishes the right itself [to bring a claim]." *Ferguson v. Loder*, 186 Md. App. 707, 727, 975 A.2d 284 (2009); *see also Barbre v. Pope*, 402 Md. 157, 177 n.16, 935 A.2d 699 (2007) ("The MTCA notice provision . . . is a condition precedent to the initiation of an action under the MTCA which must be met, as opposed to a statute of limitations for which relation back may apply") (internal quotation marks and citation omitted). Therefore, McDaniel's claims against the State of Maryland, the MDOT, and the MDTA in Counts III (state constitutional claim) and XI (negligent hiring, retention, supervision and training) must be dismissed with prejudice.

**B.     Section 1983 Claim against the State and its Agencies**

The State of Maryland, the MDOT and the MDTA also cannot be held liable under Count I, which is brought against all Defendants for violations of the Fourth and Fourteenth Amendments to the United States Constitution. As noted above, the MDOT and MDTA, as agencies of the State of Maryland, are entitled to sovereign immunity under the Eleventh Amendment. In addition, the Supreme Court has held that states and their agencies are not "persons" under 42 U.S.C. § 1983 and are therefore not subject to federal civil rights claims under the statute. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989). As a result, McDaniel's § 1983 claim against the State, the MDOT, and the MDTA in Count I must be dismissed.[2]

### C.      Claims against Officer John Doe

In the Complaint, Defendant "John Doe" is named as the second officer who assisted Officer Arnold during the underlying events. In their reply brief, Defendants have revealed that the correct identity of this person is Officer C. Izquierdo. Defs.' Reply at 2. Nevertheless, Defendants have moved to dismiss all claims asserted against this individual on the basis that Maryland law does not recognize "John Doe" pleadings, and because McDaniel failed to conduct a good faith effort to discern the correct name of this defendant. McDaniel counters that, despite his reasonable efforts, he was not able to ascertain the identity of this defendant, and seeks leave to amend his Complaint to include the officer's correct name.

Under Rule 15(c), an amendment that changes the party against whom a claim is brought relates back to the date of the original pleading if "(1) the claim in the amended complaint arose out of the same transaction that formed the basis of the claim in the original complaint; (2) the party to be brought in by the amendment received notice of the action such that it will not be

---

[2] The Complaint names the Defendant Officers in both Counts I and II, which contain almost identical allegations. To prevent this overlap, Count I is construed as only being asserted against the State of Maryland, the MDOT, and the MDTA.

prejudiced in maintaining a defense to the claim; and (3) it should have known that it would have originally been named a defendant 'but for a mistake concerning the identity of the proper party.'" *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 467 (4th Cir. 2007). The "liberal amendment policies of the Federal Rules favor relation-back," *id.* at 471, and courts are instructed to "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). In this case, the question to be resolved is whether Officer C. Izquierdo received appropriate notice of this suit and whether he would be unfairly prejudiced by being added as a Defendant.

As to the issue of notice, a newly added defendant must be deemed to have received notice of the lawsuit between the filing of the complaint and the end of the 120-day period prescribed by Rule 4(m) for service of the summons and complaint. Actual or constructive notice may suffice under the circumstances, and the notice may be effectuated through either formal or informal means. *Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1201 (4th Cir. 1989) (stating that notice "may be presumed" when "the added defendant has either a sufficient identity of interest with the original defendant or received formal or informal notice of the claim"). Indeed, the relation-back doctrine does not require a showing that the actual complaint or summons was served upon the party affected by the amendment. *Lackawanna Transp. Co. v. PSC*, 2008 U.S. Dist. LEXIS 105084, at \*20 (N.D. W. Va. Dec. 23, 2008).

Under the circumstances of this case, Officer C. Izquierdo is presumed to have received timely notice of this lawsuit. McDaniel commenced the present action on November 6, 2009, and provided notice of suit to the Maryland Attorney General and to each of the defendants (except "John Doe") on or about December 20, 2009. Defs.' Mot. to Dismiss at 1. Because the Office of the Attorney General of Maryland represents all of the Defendants in this case, the timely notice received by the entity may be fairly imputed to Officer Izquierdo. *See Byrd v.*

*Abate*, 964 F. Supp. 140, 146 (S.D.N.Y. 1997) ("Notice of a lawsuit can be imputed to a new defendant state official through his attorney, when the attorney also represents the officials originally sued."); *see also Goodman*, 494 F.3d at 474-75 (noting that notice may be presumed between defendants who share the same attorneys and bear a sufficient identity of interest). Also, Defendants have had the means and ability to identify the John Doe officer, especially since his role is described in the Complaint and he is allegedly depicted in the audiovisual recording of the events. *See, e.g.*, *Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485, 2493 (2010) (observing that Rule 15(c) "asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint") (emphasis in original); *Goodman*, 494 F.3d at 473 (noting that a defendant was in the best position to determine the correct defendant, which was readily ascertainable from descriptions provided in the complaint).

Finally, Defendants cannot persuasively maintain that Officer Izquierdo will be prejudiced in any way as a result of being added as a defendant in this case. To date, the Office of the Attorney General has adequately defended McDaniel's interests and has asserted affirmative defenses on his behalf. There has been no showing that Officer Izquierdo has suffered an unfair disadvantage or has otherwise been "prejudiced by the passage of time between the original pleading and the amended pleading." *Goodman*, 494 F.3d at 468.

Accordingly, this Court grants McDaniel twenty (20) days to amend his Complaint by substituting Officer C. Izquierdo for the John Doe defendant. Pursuant to Rule 15(c), the claims will relate back to November 6, 2009—the date the original Complaint was commenced.

  **D.**  **Section 1983 Claims against Defendant Officers**

In Count II of the Complaint, McDaniel has asserted a cause of action under 42 U.S.C. § 1983, alleging that the Defendant Officers subjected him to an unlawful search and seizure in violation of his Fourth and Fourteenth Amendment rights.[3] This claim is asserted against the Defendant Officers in their individual and official capacities and seeks monetary damages as a remedy.

As a threshold matter, this Court observes that the Eleventh Amendment extends immunity to state officials sued in their official capacities for monetary damages under section 1983. *See Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). Therefore, McDaniel's section 1983 claims must be dismissed insofar as they seek to hold the Defendant Officers liable in their official capacities.

On the other hand, this Court finds that McDaniel has stated a claim for personal liability against the Officer Defendants in their individual capacities in Count II due to their involvement in the underlying arrest, search, and detainment. *See Kentucky*, 473 U.S. at 166 ("to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right"). Nevertheless, Defendants request that this Court enter summary judgment in their favor because they acted with probable cause and are entitled to qualified immunity.

1.  Probable Cause

---

[3] Section 1983 directs that "every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . [or] suit in equity." 42 U.S.C. § 1983.

"Because an ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth and Fourteenth Amendments, such action must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir. 1993) (internal citations omitted). Any evidence that is obtained by law enforcement as a result of an unlawful stop is subject to exclusion under the fruit of the poisonous tree doctrine. *Id.* In determining whether probable cause exists in a particular situation, courts inquire into "two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992).

The Defendant Officers claim that McDaniel was pulled over because he was "speeding and/or following [another car] too closely." Defs.' Supp. Mot. to Dismiss at 9. They note that while detaining the car after the traffic stop, the Officers learned from McDaniel that he was transporting a loaded handgun in the trunk of the car. *Id.* at 10. After determining that the transportation of a loaded firearm constituted a violation of federal and state law, the officers arrested McDaniel, searched his vehicle, and uncovered the loaded weapon. *Id.* at 11.

McDaniel, however, alleges that he did not violate any traffic laws before being pulled over. Compl. ¶ 19. He notes that the audiovisual recording of the incident confirms that he was not following another vehicle too closely and that other vehicles were driving at a faster rate of speed. *Id.* ¶ 21. After being detained, the Defendant Officers discussed justifications for the stop, and one of the Officers instructed the other to inform McDaniel "that he was following too closely, or whatever you want to tell him." *Id.* ¶ 20. McDaniel states that the Defendant Officer arrested him immediately upon noticing the concealed weapon permit in his wallet and only

asked him about the firearm after he was placed under arrest.  *Id.* ¶ 23.  Even after securing the handgun in the trunk, the Officers continued to search other parts of the vehicle.  *Id.* ¶¶ 25-27.

The parties have presented two conflicting stories concerning the underlying events that occurred on November 6, 2007.  The probable cause issue may be ripe for consideration after the parties have had the opportunity to engage in discovery, or it may present genuine issues of material fact for resolution at trial.  With respect to the pending motions, McDaniel has presented factual allegations that, if proven, would render a determination that he was unlawfully searched and seized without probable cause.

2.  Qualified Immunity

The affirmative defense of qualified immunity shields an officer from monetary damages as long as his conduct is not found to "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When determining the applicability of qualified immunity, courts consider whether a constitutional right has been violated and whether the right "was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right."  *Brown v. Gilmore*, 278 F.3d 362, 367 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The United States Supreme Court recently held that reviewing judges may assess these two factors in any order they wish, in light of the unique facts of a case.  *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) ("[t]he judges of the district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

This Court finds that the qualified immunity issue, which requires a fact-dependent inquiry, cannot be resolved at this stage of the case. The parties present conflicting depictions of the underlying events, and to date, neither has supplied the record with sufficient evidence from which this Court could make an informed decision on this issue. Additionally, as a general matter, "'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Harrods v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Finally, as noted above, McDaniel has adequately alleged that his arrest, search, and seizure were not based upon probable cause, and this effectively prevents Defendants from being granted qualified immunity at this stage of the proceedings. *See Harrison v. Prince William County Police Dept.*, 640 F. Supp. 2d 688, 702 (E.D. Va. 2009) ("The requirement that an officer have probable cause to seize and arrest an individual has been clearly established constitutional law for decades.").

Accordingly, McDaniel has successfully stated a claim in Count II under 42 U.S.C. § 1983 against the Defendant Officers in their individual capacities.

### E.     State Law Tort Claims against the Defendant Officers

In Counts V–VIII, McDaniel brings state law tort claims against the Defendant Officers for false imprisonment, intentional infliction of emotional distress, battery, and negligence. Under the Maryland Tort Claims Act, state personnel are immune from tort liability for discretionary acts within the scope of their public duties and made without malice or gross negligence.[4] Md. Code Ann. Cts. & Jud. Proc. § 5-522(b). Defendants argue that the state law tort claims asserted in Counts V-VIII are subject to dismissal for failure to state a claim under

---

[4] The individual Defendants, as MDTA police officers, are considered "state personnel" under the MTCA. Md. Code Ann., State Gov't § 12-101(a)(2)(i).

Fed. R. Civ. P. 12(b)(6), and alternatively, that his claims are proscribed by the MTCA for failure to present allegations of malice or gross negligence.[5]

### 1. False Imprisonment (Count V)

McDaniel alleges that his constitutional rights were violated when he was unlawfully arrested, detained, and imprisoned without probable cause. "[W]here the basis of a false imprisonment action is an arrest by a police officer, the liability of the police officer for false imprisonment will ordinarily depend upon whether or not the officer acted within his legal authority to arrest." *Montgomery Ward v. Wilson*, 339 Md. 701, 721, 664 A.2d 916 (1995). As noted above, McDaniel has adequately alleged that his arrest was unlawful and was not based upon probable cause; therefore he has stated a claim for false imprisonment.

In addition, this Court finds that McDaniel's false imprisonment claim is premised upon factual allegations that give rise to an inference of malice. Courts applying Maryland law define "malice" as "an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Shoemaker v. Smith*, 353 Md. 143, 163, 725 A.2d 549 (1999) (quoting *Leese v. Baltimore County*, 64 Md. App. 442, 480, 497 A.2d 159 (1985)). Plaintiffs face a high standard when pleading malice and conclusory allegations are insufficient. *See Elliott v. Kupferman*, 58 Md. App. 510, 528, 473 A.2d 960 (1984) ("Merely asserting that an act was done maliciously, or without just cause, or illegally, or for improper motive does not suffice. To overcome a motion

---

[5] While McDaniel's claims against the State and its agencies are barred for non-compliance with the notice requirements of the MTCA, this procedural deficiency does not prevent his claims against the individual officers from proceeding. *Hovatter v. Widdowson*, 2004 U.S. Dist. LEXIS 18646, at *25 n.14 (D. Md. Sept. 15, 2004); *see also Barnhill v. Strong*, 2008 U.S. Dist. LEXIS 14463, at *20 (D. Md. Feb. 25, 2008) (noting that failure to comply with the MTCA notice requirements will not bar a claim against the state officer if "the suit sufficiently alleges that the officer acted with malice"); *Barbre v. Pope*, 172 Md. App. 391, 414, 915 A.2d 448 (2007) (noting that "the State Treasurer does not require early notice of a claim against an individual officer alleging a malicious or grossly negligent tort").

raising governmental immunity, the plaintiff must allege with some clarity and precision those facts which make the act malicious.").

McDaniel claims that his search and seizure were knowingly executed without probable cause and that the Defendant Officers fabricated a *post hoc* justification for the stop. It is alleged that before approaching the parked vehicle the Officers engaged in a discussion "about 'what' excuse they should give" and one officer urged the other to explain "that [McDaniel] was following too closely, or whatever you want to tell him." Compl. ¶¶ 20, 33. McDaniel alleges that the proffered reasons of following too closely and speeding were blatantly pretextual and that the audiovisual confirms this. In addition, he claims that these events and his ultimate imprisonment were the product of a racially motivated animus and that Defendant Officers pulled him over under false pretenses so that they could search his vehicle for drugs. McDaniel has therefore provided sufficiently particularized allegations of malicious conduct, and the Officers are not entitled to statutory immunity at this stage with respect to the claim of false imprisonment.

### 2. Intentional Infliction of Emotional Distress (Count VI)

McDaniel asserts a claim of intentional infliction of emotional distress in Count VI of his Complaint. Compl. at ¶¶ 74–79. To make a prima facie case of intentional infliction of emotional distress ("IIED"), a plaintiff must establish: 1) intentional or reckless conduct; 2) extreme and outrageous conduct; 3) a causal connection between the wrongful conduct and the emotional distress; and 4) severe emotional distress. *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611 (1977) (citing Restatement (2d) of Torts § 46 (1965)). "Maryland courts have cautioned that the tort of intentional infliction of emotional distress should be imposed sparingly, and its balm reserved for those wounds that are truly severe and incapable of healing

themselves." *Solis v. Prince George's County*, 153 F. Supp. 2d 793, 804 (D. Md. 2001) (internal quotation marks omitted).

McDaniel has failed to state a claim for IIED because he has not adequately pled facts indicating severe emotional distress. McDaniel has alleged, in conclusory fashion, that he "has suffered extreme emotional distress, including but not limited to, insomnia, humiliation, embarrassment, and anxiety—as well as the attendant physical manifestations of such emotional distress." Compl. ¶ 78. He further claims that he "has been nervous to even seek employment, and has been anxious following each application for employment," and that he "has desired to seek the help of mental health professionals to help him deal with the emotional distress he has suffered but has been unable to do so due to a lack of health insurance." Compl. ¶¶ 78-79.

Plaintiffs are required to plead the element of severe emotional distress with particularity. *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002). Here, McDaniel has not set forth "specific facts regarding the nature, intensity, and duration of the alleged emotional trauma." *Chin v. Wilhelm*, 2006 U.S. Dist. LEXIS 13101, at *31 (D. Md. Mar. 24, 2006). He has also not alleged facts showing "a severely disabling emotional response, so acute that no reasonable man could be expected to endure it." *Gennell v. Denny's Corp.*, 378 F. Supp. 2d 551, 560 (D. Md. 2005) (internal quotation marks omitted). Anxiety relating to the process of seeking employment does not rise to the requisite level of severity, and McDaniel has not been compelled to obtain medical treatment. *See Templeton v. First Tennessee Bank*, 2010 U.S. Dist. LEXIS 54982, at *17 (D. Md. June 3, 2010) (dismissing IIED claim even where plaintiff alleged that she suffered "severe mental distress for which she inured medical costs"). McDaniel's IIED claim in Count VI is therefore dismissed.

    3.  <u>Battery (Count VII)</u>

McDaniel claims that the Defendant Officers improperly arrested and handcuffed him and "ultimately are responsible for Plaintiff's stay in the Baltimore City Jail during which he experienced numerous and ongoing unwanted physical contact." Compl. at ¶ 81. McDaniel does not allege that the Defendant Officers touched him in any manner that showed "wanton or reckless disregard for [his] safety." *Young v. City of Mt. Ranier*, 238 F.3d 567, 579 (4th. Cir. 2001) (quoting *Boyer v. State*, 353 Md. 558, 594 (1999)). Instead, McDaniel appears to argue on the theory that the Defendant Officer's arrest set in motion the events which led to unwanted touching in jail.

"A battery occurs when one intends a harmful or offensive contact with another without that person's consent." *Nelson v. Carroll*, 355 Md. 593, 600, 735 A.2d 1096 (1999). To constitute a battery, the defendant's action must be an affirmative action, although it may directly or indirectly result in harmful contact with the plaintiff. *Id.* For example, an indirect contact could be deemed a battery when a defendant shoots a gun and strikes another with a bullet. *Nelson v. Carroll*, 355 Md. 593, 601, 735 A.2d 1096 (1999)). In *Cullen v. Somerset County*, 2010 U.S. Dist. LEXIS 51723, at *23 n.7 (D. Md. May, 25, 2010) this Court determined that a plaintiff inmate had properly stated a battery claim against a prison warden who had "pegged [the inmate] as a snitch." It was noted that "to establish a battery claim, 'it is enough that the defendant sets a force in motion which ultimately produces the result.'" *Id.* at *24 (quoting *Nelson*, 355 Md. at 601). However, in this case, the causal link between the Defendant Officers' actions and the "unwanted physical contact" McDaniel allegedly received in the Baltimore City Jail is far too attenuated. Unlike in *Cullen*, where the warden's actions could be viewed as reasonably certain to lead to the inmate's injuries, McDaniel cannot claim that his arrest was the direct or indirect cause of any battery that he received in jail. Count VII is therefore dismissed.

4. Negligence (Count VIII)

In Count VIII McDaniel alleges that the Defendant Officers' negligence caused him physical, mental, and emotional injury. Compl. at ¶¶ 85–87. This claim is barred because the MTCA provides state personnel with qualified immunity from negligence actions. *Ford v. Baltimore City Sherriff's Office*, 149 Md. App. 107, 127, 814 A.2d 127 (2002). It follows that plaintiffs may only maintain claims against state personnel that are based upon allegations of malice or gross negligence. *Young v. City of Mt. Ranier*, 238 F.3d 567, 579 (4th. Cir. 2001). Thus, McDaniel negligence claim against the Defendant Officers must be dismissed.

**F.      State Constitutional Claim against the Defendant Officers**

In Count IV, McDaniel alleges that the Defendant Officers violated Articles 24 and 26 of the Maryland Constitution's Declaration of Rights through their involvement in his unlawful search and seizure. These state constitutional claims are considered *in pari materia* to his Fourth and Fourteenth Amendment claims. *Miller v. Prince George's County*, 475 F.3d 621, 631 n.5 (4th Cir. 2007). Indeed, the only "major distinction between the state constitutional claims and the federal claims is that Maryland does not recognize the defense of qualified immunity for officials committing state constitutional violations." *Walker v. Prince George's County*, 2008 U.S. Dist. LEXIS 109477, at *16 (D. Md. Mar. 28, 2008). Therefore, McDaniel has successfully stated a claim for violations of these state constitutional rights against the Defendant Officers. Moreover, because he has properly alleged that the Officers' conduct was malicious, McDaniel may seek both compensatory and punitive damages. *See Williams v. Prince George's County*, 112 Md. App. 526, 546 (1996) (noting that punitive damages are only recoverable upon the establishment of probable cause).

**G.      Civil Conspiracy Claims**

It is alleged in Counts IX and X that the Defendants "entered into a conspiracy to racially profile . . . in violation of his State and Federal Constitutional Rights." Compl. ¶¶ 89, 94. As stated above, McDaniel cannot maintain a claim against the State or it agencies because he failed to comply with the notice requirements of the MTCA and because these Defendants cannot be held liable under 42 U.S.C. § 1983. Therefore, the civil conspiracy claim in Count IX must be dismissed.[6]

McDaniel's claim in Count X against the Defendant Officers is barred to the extent that it seeks to assert a separate state cause of action for conspiracy. Under Maryland law, "civil conspiracy is not recognized as a separate cause of action;" instead it "provides a means of holding a co-conspirator liable for the acts committed in furtherance of the conspiracy by another member." *Woods v. Stewart Title Guar. Co.*, 2006 U.S. Dist. LEXIS 55767, at *11-12 (D. Md. July 28, 2006). *See also Hovatter v. Widdowson*, 2004 U.S. Dist. LEXIS 18646, at *33 (D. Md. Sept.15, 2004) ("Under Maryland law, civil conspiracy is not a separate tort, but rather serves to extend liability to co-conspirators once the plaintiff has established some other tortious wrong."). As a result, this Court does not recognize Count X as asserting a separate state law claim of civil conspiracy. McDaniel may, however, potentially rely upon this theory to extend liability to either of the conspiring Defendant Officers under his surviving claims of false imprisonment and violation of state constitutional rights. *See, e.g., Hovatter*, 2004 U.S. Dist. LEXIS 18646, at *34 (disallowing pleading of civil conspiracy as an independent cause of action, but permitting plaintiff to raise this argument in order to extend liability to co-conspirators on other state law claims); *Superior Bank v. Tandem National Mortgage, Inc.*, 197 F. Supp. 2d 298, 319 (D. Md. 2000) (same).

---

[6] The Complaint names the Defendant Officers in both Counts IX and X, which contain almost identical allegations. To prevent this overlap, Count IX is construed as only being asserted against the State of Maryland, the MDOT, and the MDTA.

Nonetheless, an independent cause of action does exist for civil conspiracy to violate federal constitutional rights. "To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [his] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996). Towards this end, there must be a showing that the defendants entered into some sort of an agreement, whether positive or tacit, to deprive the plaintiff of a constitutional right. *Id.*; *see also Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) (noting that a conspiracy claimant "must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights"). Courts have held plaintiffs to a relatively stringent standard in assessing whether a conspiracy claim has been properly alleged. *See Gooden v. Howard County*, 954 F.2d 960, 969-70 (4th Cir. 1992) ("To avoid evisceration of the purposes of qualified immunity, courts have [] required that plaintiffs alleging unlawful intent in conspiracy claims under § 1985(3) or § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss.").

McDaniel has set forth specific factual allegations showing that the Defendant Officers acted in a joint and concerted manner in the underlying events. It is alleged that the Defendant Officers acted without any proper objective justification when they pulled over McDaniel's vehicle, placed him under arrest, and searched his vehicle. He claims that the officers even engaged in a discussion in which they concocted pretextual justifications for the vehicle stop— thus indicating a "meeting of the minds" through an expressed communication of a "conspiratorial objective." *Hinkle*, 81 F.3d at 421. At bottom, the allegations of the complaint, considered together and liberally construed, "reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common

and unlawful plan." *Hinkle*, 81 F.3d at 421. McDaniel has therefore stated a claim for civil conspiracy under § 1983.[7]

### H. *Respondeat Superior* Claim

The *respondeat superior* doctrine may, in certain contexts, be raised to impute liability on a principal or employer for the act or an agent or employee. *Davidson-Nadwodny v. Wal-Mart Associates, Inc., et al.*, 2008 U.S. Dist. LEXIS 45633, at *15-16 (D. Md. June 3, 2008). However, the doctrine may not be asserted as a separate cause of action. *Id.* Also, it is noted that sovereign immunity protects the State and its agencies from direct and *respondeat superior* liability for ordinary and constitutional tort claims. *Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 326, 780 A.2d 410 (2001). As a result Count XII must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Paper No. 7) and Supplemental Motion to Dismiss (Paper No. 9) are hereby GRANTED IN PART insofar as Counts I, III, VI, VII, VIII, IX, XI, and XII are DISMISSED. The motions are DENIED IN PART insofar as Counts II (Section 1983 claim against the Defendant Officers), IV (claim under the Maryland Declaration of Rights against the Defendant Officers), V (false imprisonment), and X (civil conspiracy against the Defendant Officers) may proceed. In addition, this Court grants McDaniel twenty (20) days to amend his Complaint by substituting Officer C. Izquierdo for the John Doe defendant. A separate order follows.

---

[7] McDaniel's Complaint could also be interpreted as asserting a conspiracy claim under 42 U.S.C.§ 1985(3), although he does not explicitly reference this statutory provision in his Complaint. A claimant presenting a conspiracy claim under § 1985(3) must additionally show that the conspirators were motivated by "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Carpenters v. Scott*, 463 U.S. 825, 835 (1983). Having concluded that McDaniel's § 1983 conspiracy claim survives dismissal, this Court need not assess whether he properly stated a conspiracy claim under § 1985(3). *Harrison v. Prince William County Police Dept.*, 640 F. Supp. 2d 688, 708 n.4 (E.D. Va. 2009).

Date : August 18, 2010                    /s/_____
                                          Richard D. Bennett
                                          United States District Judge